**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**



UNITED STATES OF AMERICA,

Plaintiff,

v.

**REPORT AND**
**RECOMMENDATION**
14-CR-6038 (EAW)

ALEXANDER GREEN and CHARLES GREEN,

Defendants.

## Preliminary Statement

On March 27, 2014, Alexander and Charles Green ("defendants") were indicted on one count of conspiracy to possess with the intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841, and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. See Docket # 1. On April 10, 2015, defendants filed a joint motion to dismiss Count One of the Indictment, alleging that the classification of marijuana as a Schedule I controlled substance under the Controlled Substances Act ("CSA") violates their constitutional rights. See Docket # 82 at 6-9. After receiving multiple briefs from defendants and the government, the Court heard oral argument on defendants' motion on August 19, 2015. See Docket # 114.

The following is my Report and Recommendation as to defendants' motion to dismiss Count One of the Indictment.

## Background

Count One of the Indictment charges that, beginning in or about January 2010, Alexander and Charles Green and co-defendants conspired to distribute 100 kilograms or more of a substance containing a detectable amount of marijuana, a Schedule I controlled substance under the CSA. See Docket # 1 at 1-2. Relying on what they perceive to be a change in course on acceptable marijuana use across the country, defendants moved to dismiss Count One of the Indictment on two separate constitutional grounds. First, defendants argue that marijuana's Schedule I classification violates their equal protection rights under the Fifth and Fourteenth Amendments. See Docket # 83 at 3, 8-33. Defendants contend that the continued Schedule I classification of marijuana is unconstitutional because marijuana does not have a high potential for abuse, because it currently has an accepted use in medical treatment in the United States,[1] and because it can be safely consumed under medical supervision. Id. at 18-33. Defendants request that this Court grant them an opportunity to establish these

---

[1] Defendants focus the bulk of their claim on this point, arguing that, "in light of the quality and quantity of peer-reviewed literature over the past decade, the acceptance of the medical use of marijuana by twenty-three states and the District of Columbia, and other indicia of the acceptance of marijuana's medical use, it cannot be rationally argued" that marijuana has no currently accepted medical use in treatment in the United States, as required for Schedule I controlled substances by the CSA. See Docket # 109 at 2.

facts through an evidentiary hearing.[2]   Id. at 3.   Additionally, though less forcefully, defendants argue that the current CSA classification of marijuana violates the doctrine of equal sovereignty under the Tenth Amendment because New York recently enacted a medical marijuana program.   Id. at 3-4, 33-36.

In response, the government notes that every court to consider these issues has rejected defendants' arguments.   Docket # 106 at 2-3, 15-19.   This is because, the government asserts, marijuana's classification under the CSA is rationally related to a legitimate government interest that Congress has chosen to address through a regulatory scheme.   Id. at 15-20.   The government argues that the Court's interference with this scheme would be a juridical transgression that violates forty years of precedent and clear legislative intent.   Id.   The government also contends that defendants' Tenth Amendment equal sovereignty argument lacks muster; not only does Congress have the power to regulate and criminalize the sale of marijuana irrespective of state law, but the government asserts that defendants have failed to evince any

---

[2] Defendants cite to the decision and borrow from the defendants' papers in United States v. Pickard, 100 F. Supp. 3d 981 (E.D. Cal. 2015), a recent case from the Eastern District of California in which the defendants raised nearly identical claims that the court rejected after holding an evidentiary hearing.   See Docket # 83 at n.4.   Noting that Pickard "ushers in a new era" of medically acceptable marijuana use and "exposes the fissures that underlie the original classification [of marijuana] in 1970," defendants urge this Court to hold its own evidentiary hearing and find that the Pickard court erred.   See Docket # 109 at 9-11.

indication that there is a geographically disparate application of the CSA in violation of the Tenth Amendment. Id. at 23-25. Accordingly, because defendants have failed to override the rational basis for the government's interest in regulating marijuana and because the classification of marijuana is an issue historically and most efficiently addressed by the legislature, the government urges this Court to deny defendants' request for an evidentiary hearing and deny their motion to dismiss. Id. at 23-25.

## Discussion

### I. The Government's Jurisdictional Claim

As a preliminary matter, the Court is tasked with determining whether the undersigned has the jurisdiction to decide defendants' motion. The government argues that this Court has limited authority over challenges to a controlled substance's scheduling; under the CSA, all administrative determinations made by the Attorney General, including scheduling, are subject to review in circuit court. See Docket # 113 at 2 (citing 21 U.S.C. § 877). The government concedes, however, that defendants are not asking this Court to "remove" or "reschedule" marijuana, but, rather, to find the CSA's current classification of marijuana unconstitutional. Id. at 2-3. For the reasons articulated by the number of courts to contemplate this issue before, I find that this Court has jurisdiction to evaluate the defendants' constitutional challenge

4

to marijuana's scheduling under the CSA.  See, e.g., United States v. Pickard, 100 F. Supp. 3d 981, 994-97 (E.D. Cal. 2015) ("A federal court does have the power, when required, to declare Acts of Congress unconstitutional, the gravest and most delicate duty that courts are called on to perform." (internal quotations and citations omitted)); see also United States v. Kiffer, 477 F.2d 349, 352-57 (2d Cir. 1973) (engaging in constitutional review of Schedule I classification of marijuana).  Suffice it to say that "[i]t is emphatically the province and duty of the judicial department to say what the law is," a duty that occasionally compels the courts to review acts of Congress for "repugnan[ce] to the constitution." Marbury v. Madison, 5 U.S. 137, 177 (1803).  Accordingly, the Court will proceed to the substance of defendants' constitutional challenge.

## II. Defendants' Equal Protection Claim

The gist of the defendants' claim is that, in light of current research and medical trends, there is no basis for Congress to conclude that marijuana qualifies as a Schedule I controlled substance under the CSA.  To better understand their claim, the Court begins by looking to the text of the CSA.

Statutory Framework: In 1970, Congress enacted the CSA in an effort to create "a comprehensive regime to combat the international and interstate traffic in illicit drugs." Gonzalez v. Raich, 545 U.S. 1, 13 (2005).  Citing the "substantial and detrimental effect

on the health and general welfare of the American people" posed by drug trafficking, Congress made it unlawful to, among other things, distribute or possess with intent to distribute the controlled substances listed in the statute.   21 U.S.C. §§ 801(2), 841(a)(1). In an attempt to differentiate between types of controlled substances, Congress established five schedules defined by a number of factors.   See 21 U.S.C. § 812.  To qualify under Schedule I, the controlled substance must: (1) have "a high potential for abuse"; (2) have "no currently accepted medical use in treatment in the United States"; and (3) have "a lack of accepted safety for use . . . under medical supervision."  21 U.S.C. § 812(b)(1).  Since the CSA's enactment, Congress has classified marijuana as a Schedule I controlled substance.  See id.

The CSA also contemplates the scheduling and de-scheduling of controlled substances.  Under the CSA, the Attorney General may re-schedule or de-schedule a controlled substance if they find that it no longer meets the statutory criteria of its current classification.   See 21 U.S.C. § 811(a).   This process may be initiated by the Attorney General, the Secretary of Health and Human Services, or based on the petition of an interested party.  Id.

Standard of Review: In evaluating defendants' equal protection challenge, this Court must first determine the proper level of scrutiny to apply.  See Kirk v. N.Y. State Dept. of Educ., 562 F. Supp. 2d 405, 409 (W.D.N.Y. 2008) (citing Hedgepeth ex rel.

6

Hedgepeth v. Washington Metro. Area Transit Auth., 386 F.3d 1148, 1153 (D.C. Cir. 2004)).   When adjudicating equal protection claims, courts apply one of three ascending tiers of scrutiny, which are demarcated by the characteristic upon which the purported disparity turns.   The first tier, strict scrutiny,

> demands that classifications be narrowly targeted to serve compelling state interests and is reserved for suspect classifications or classifications that burden fundamental rights.   Intermediate scrutiny requires that classifications be substantially related to important governmental interests; it is applied to so-called "quasi-suspect" classifications.   Under rational basis review, a classification need only be rationally related to a legitimate governmental interest.

Id.

Defendants urge this Court to apply strict scrutiny when reviewing their challenge to the CSA because "the right to be free from incarceration is one of the greatest of the fundamental rights."   Docket # 83 at 12-13.   As defendants concede, though, this line of argument has been uniformly rejected by the courts. See Docket # 109 at 7.   That is because defendants' argument is misplaced.   To be sure, "[e]very person has a fundamental right to liberty in the sense that the government may not punish [them] unless and until it proves [their] guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees."   Chapman v. United States, 500 U.S. 453, 465 (1991).   However, in cases involving substantive due

process such as this one, defendants must forward a "careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotations and citations omitted). Put differently, the asserted fundamental liberty interest, which should be deeply rooted in our nation's legal tradition, must be narrowly and precisely defined. Id. at 722. Defendants resist carefully formulating their asserted interest likely because, when spelled out more fully, it becomes less compelling. In short, defendants ask this court to determine whether they have a fundamental right to use, sell, or possess marijuana without facing incarceration. The answer to that question is unequivocally no. See United States v. Kiffer, 477 F.2d 349, 352-53 (2d Cir. 1973) ("Since there is no colorable claim of a fundamental constitutional right to sell marihuana . . . appellants must establish that prohibition of commercial distribution of marihuana lacks any reasoned justification."); see also United States v. Fogarty, 692 F.2d 542, 547 (8th Cir. 1982) ("Because there is no fundamental constitutional right to import, sell, or possess marijuana, [the CSA's classification] must be upheld unless it bears no rational relationship to a legitimate government purpose."). Accordingly, the Court denies defendants' request to apply strict scrutiny based on the alleged implication of a fundamental right.

    Defendants next argue that the instant case triggers strict

scrutiny because the scheduling of marijuana under the CSA "was based on race-based fear and . . . burdens people of color more than white people." Docket # 83 at 13-14. In order to trigger strict scrutiny based on a suspect racial classification, defendants need to prove that the CSA, which is racially neutral on its face, has a disparate impact on a suspect class and that the disparate impact is the result of discriminatory intent. See Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 272 (1979); see also Hayden v. Paterson, 594 F.3d 150, 162-64 (2d Cir. 2010). Discriminatory intent "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Feeney, 442 U.S. at 279 (internal citations and quotations omitted).

Defendants rest their suspect classification argument on a series of racially-inflammatory comments made by Harry J. Anslinger, the former Commissioner of the Federal Bureau of Narcotics, while he lobbied for the passage of the Marijuana Tax Act of 1937 and sentencing statistics indicating that a majority of federal marijuana offenders from 2009 to 2013 are Hispanic. Docket # 83 at 13-16. Though Anslinger's comments are odious, defendants fail to thread the needle between his statements from 1937 and the intent behind Congress' decision to enact the CSA over

three decades later. Having presented no compelling evidence to establish that Congress acted with invidious discriminatory purpose, defendants' request for this Court to apply strict scrutiny based on suspect classification is also rejected. See, e.g., Pickard, 100 F. Supp. 3d at 1004 (citing United States v. Heying, No. 14-30, 2014 WL 5286155, at *4 (D. Minn. Oct. 15, 2014)).

Accordingly, and based on the precedent set by the litany of cases cited by the government, this Court applies rational basis review to defendants' claim. See Docket # 106 at 14-15 (internal string citation omitted). Indeed, from a normative perspective, defendants face an uphill battle by relying on equal protection jurisprudence to carry the day. While they are correct in noting that the Supreme Court has interpreted the Equal Protection Clause to be a safeguard against the government "making improper classifications," that fails to capture the full picture of the law. Docket # 83 at 8 (citing Plessy v. Ferguson, 163 U.S. 537 (1896) (Harlan, J., dissenting)). As the Supreme Court has reiterated time and again, "[t]he liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." See, e.g., United States v. Windsor, 133 S. Ct. 2675, 2695 (2013) (citing Bolling v. Sharpe, 347 U.S. 497, 499-500 (1954)). With this liberty interest in mind, the Supreme Court has relied on the Equal Protection Clause in a number of landmark decisions – some of which

10

defendants rely on in their motion - to overturn laws that discriminate against individuals based on improper classifications.[3] See Brown v. Board of Education, 347 U.S. 483 (1954) (finding unconstitutional laws that segregate public schools on the basis of race); Reed v. Reed, 404 U.S. 71 (1971) (overturning law that discriminates on the basis of gender); Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (invalidating laws that discriminate on the basis of sexual orientation).  However, the discriminatory classification identified by defendants here - the classification of a controlled substance - does not warrant the searching judicial scrutiny occasioned by claims that similarly situated persons have suffered disparate treatment.  Thus, the question for this Court to decide is whether there is any rational or conceivable reason for the Schedule I classification of marijuana.  In particular, while defendants question whether marijuana fulfills any of the three statutory requirements for Schedule I controlled substances, they primarily rest their challenge on the second prong - whether there is any rational basis to conclude that marijuana has "no

_____

[3] While the citations provided involve the Supreme Court striking down state - as opposed to federal - laws, the Court has interpreted the Fifth Amendment's due process guarantee as imposing the same equal protection and due process restrictions on the federal government.  See Bolling v. Sharpe, 347 U.S. 497, 498-99 (1954) ("The Fifth Amendment, which is applicable in the District of Columbia, does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states.  But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive.").

currently accepted medical use in treatment in the United States."
21 U.S.C. § 812(b)(1). Because the defendants' "accepted medical
use" argument is frankly the only plausible challenge to marijuana's
Schedule I classification, the Court will address its merits.

Analysis: A review of the caselaw reveals that, despite the
changing climate of opinion on medical and recreational marijuana
use, every court to contemplate this question has found that the
CSA's classification of marijuana survives rational basis review.
See generally United States v. Pickard, 100 F. Supp. 3d at 1008-09
("In view of the principled disagreements among reputable
scientists and practitioners regarding the potential benefits and
detrimental effects of marijuana, this court cannot say that
[marijuana's] placement on Schedule I is so arbitrary or
unreasonable as to render it unconstitutional."); see also
Sacramento Nonprofit Collective v. Holder, 552 F. A'ppx. 680, 683
(9th Cir. 2014) (rejecting through citation to controlling Ninth
Circuit caselaw the proposition that "the CSA violates Equal
Protection because the federal ban on medical marijuana, while
permitting prescription drugs, has no rational basis" (internal
quotations and citations omitted)); United States v. Canori, 737
F.3d 181, 183 (2d Cir. 2013) ("We have previously upheld the
constitutionality of Congress's classification of marijuana as a
Schedule I drug." (internal citations omitted)); United States v.
Kiffer, 477 F.2d 349, 356 (2d Cir. 1973) ("Although we are in no

position at this time and on this record to determine whether marihuana would be listed most appropriately where it is or in some other category, we can conclude that the current statutory arrangement is not so unreasonable or arbitrary as to endanger the validity of the sentences imposed on appellants."); United States v. Inzer, No. 8:14-cr-437, 2015 WL 3404672, at *3 (M.D. Fla. May 26, 2015) ("Although Defendant relies on a number of exhibits regarding marijuana's medical efficacy and the medical and public opinions related to its use, these filings are ultimately irrelevant, however, as federal courts have repeatedly rejected constitutional challenges to the classification of marijuana under the CSA when applying traditional rational basis review." (internal quotation and citations omitted)); United States v. Heying, No. 14-30, 2014 WL 5286155, at *4 (D. Minn. Oct. 15, 2014) ("Under rational basis review, which requires only a rational relationship to legitimate state interests, the classification of marijuana is clearly constitutional. Although [defendant] argues that the statutory scheme is over-inclusive, Congress has wide latitude to address social problems, and the potential for abuse of marijuana and the risks to public health to support the rationality of the continued Schedule I classification." (internal quotations and citations omitted)); United States v. Taylor, No. 1:14-cr-67, ECF No. 502 at 9 (W.D. Mich. Sept. 8, 2014) ("The most the Defendants can show is that there is not a complete

consensus in the scientific community on [the proper classification of marijuana]. But that puts the issue squarely in the hands of Congress and the DEA, not the Courts." (internal citations omitted)); United States v. Wilde, 74 F. Supp. 2d 1092, 1099 (N.D. Cal. 2014) ("[U]nder traditional rational basis review, the mere existence of an ongoing vigorous dispute as to the physical and psychological effects of marijuana, its potential for abuse, and whether it has any medical value, supports the rationality of continued Schedule I classification." (internal quotation and citation omitted)); United States v. Zhuta, No. 09-CR-357A, 2010 WL 5636212, at *3 (W.D.N.Y. Oct. 29, 2010) ("As to the arbitrariness and irrationality of the classification of marijuana as a Schedule I drug . . . [t]hese arguments have been repeatedly rejected.").

While defendants attempt to qualify, differentiate, and dismiss the abundance of caselaw working against them, see Docket # 109 at 13-17, their argument can be boiled down to two ideas: (1) the Second Circuit allows for courts to hear equal protection challenges to marijuana's CSA scheduling; and (2) the times are changing. They're right on both counts. Indeed, as the court in Pickard presciently noted, "[a]t some point in time, in some court, the record may support granting" a motion like the one filed by defendants. 100 F. Supp. 3d at 988. However, based on the parties' submissions, this is neither the time nor the Court to make that decision.

14

The thorniest question defendants pose is whether to hold an evidentiary hearing on their motion. Defendants argue that a hearing is necessary because the government has not provided "evidence for the proposition that there is *no* current acceptance in this country of the medical use of marijuana,"[4] because the court in Pickard erred, and because there have been developments on the use of medical marijuana in New York. See Docket # 109 at 7-13 (emphasis in original). Defendants also note that an evidentiary hearing would not be unprecedented: courts within the Second Circuit have held hearings on similar issues before. Id. at 5 (citing United States v. Kiffer, 477 F.2d 349 (2d Cir. 1973) and United States v. Maiden, 355 F. Supp. 743 (D. Conn. 1973)). The government contends that such a hearing would waste judicial resources because the evidence presented would mirror the evidence in Pickard and this Court would reach the same conclusion as that court. See Docket # 106 at 23-25. Moreover, the government notes that the DEA has

---

[4] This is an incorrect and misleading metric. Under rational basis review, the analysis is not whether there is "no current acceptance in this country of the medical use of marijuana," but whether there is absolutely no rational basis for Congress to make that determination. Given this highly deferential standard, the Court would need to find that "there is only one supportable point of view about marijuana's safe, medical value or abuse potential" for defendants to prevail. Pickard, 100 F. Supp. 3d at 1006. In other words, the defendants would need to prove that the facts supporting Congress' determination are not just in flux, but are obsolete.

considered rescheduling marijuana on several occasions, [5] suggesting that - contrary to defendants' claim - the government is aware of the ongoing debate on marijuana and judicial intervention is unnecessary. See Docket # 113 at 9-11.

The caselaw, unfortunately, provides less-than-clear directions on whether a hearing is necessary. In Pickard, the court granted the defendants' request for an evidentiary hearing because their "moving papers set forth facts with sufficient specificity, supported by declarations showing there is new scientific and medical information since marijuana's initial scheduling, raising contested issues of fact regarding whether marijuana's continued inclusion as a Schedule I substance passes constitutional muster." 100 F. Supp. 3d at 998 (citing United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000)). After both sides presented their evidence, however, the court noted "that disagreements among well-informed experts as to marijuana's medical use persist." Id. at 1007. Conversely, in Taylor, the court declined to hold an evidentiary hearing, noting that "a district court is obliged to hold a hearing only if the difference in facts is material, that is, only if the disputed fact makes a difference in the outcome."

---

[5] According to some reports, the DEA recently announced that it may release a decision on whether to reschedule marijuana soon. See Trevor Hughes, *DEA could reclassify marijuana, allowing doctors to conduct more research*, USA Today, May 24, 2016, http://www.usatoday.com/story/news/2016/05/21/dea-could-resched ule-marijuana-allowing-doctors-conduct-more-research/84670716/.

No. 1:14-cr-67, ECF No. 502 at 2 (quoting United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991)).  Other courts have similarly declined to hold evidentiary hearings.  See Inzer, No. 8:14-cr-437, 2015 WL 3404672, at *5; see also Wilde, 74 F. Supp. 3d at 1099 ("Moreover, since traditional rational basis review does not warrant engaging in scrutiny of the factual merits of the scientific debate, no evidentiary hearing is warranted in this case.").

Though not precisely on point, the Second Circuit has held that, in the context of a motion to dismiss based on vindictive prosecution, an evidentiary hearing is required only if the defendant places a controlling fact in dispute.  United States v. White, 972 F.2d 16, 20 (2d Cir. 1992); see also United States v. Richardson, 2010 WL 5553995, at *1 (W.D.N.Y. Dec. 9, 2010) (collecting cases for the proposition that, in the context of a motion to suppress, an evidentiary hearing is required if the defendant demonstrates "a specific factual dispute that can be resolved" at the hearing).  Based on this standard, an evidentiary hearing is unnecessary.  To adopt the court's language in Taylor,

> as a matter of substance, the most the Defendants have demonstrated is that there is medical authority today that could support re-scheduling or de-scheduling marijuana.  But that's not the question.  The question for Equal Protection analysis is whether there was and is any rational basis for the scheduling chosen by Congress and confirmed to date by the DEA.  There unquestionably was and is.  Public perception of marijuana is changing.  And available experts may be ready to testify in support of some medically safe and valuable use for the drug today.  But there was and is

17

> plenty of objective medical information (both from the
> 1970s and today) to provide a rational basis for Congress
> to place marijuana on Schedule I of the CSA, and to leave
> future changes in scheduling to the DEA, which has thus
> far declined. . . . The most Defendants can show is that
> there is not a complete consensus in the scientific
> community on this issue.

No. 1:14-cr-67, ECF No. 502 at 8-9 (W.D. Mich. Sept. 8, 2014).  While

defendants rightly note that the government has not provided the

Court with an affidavit from a medical or scientific expert in

support of its position, see Docket # 109 at 18, that does not free

defendants from their burden of proving "that the legislative facts

on which the classification is apparently based could not reasonably

be conceived to be true by the governmental decisionmaker."  Vance

v. Bradley, 440 U.S. 93, 111 (1979) (internal citations omitted).

Based on my review of the parties' submissions and the caselaw,

defendants are unable to meet that burden.

To be sure, as a number of courts have noted, "the landscape

with respect to marijuana has changed significantly since 1970 .

. . ."  Pickard, 100 F. Supp. 3d at 988.  There are many compelling

arguments, including some made by members of New York's judiciary,[6]

about the therapeutic and medicinal value of marijuana.  Indeed,

as defendants point out, in New York, attitudes have changed so

drastically that medical marijuana is now available for

_____

[6] See Gustin L. Reichbach, A Judge's Plea for Pot, N.Y. Times,
May                            16,                            2012,
http://www.nytimes.com/2012/05/17/opinion/a-judges-plea-for-med
ical-marijuana.html?_r=0

consumption.  See Docket # 109 at 3-5.  While that does present troubling questions that this Court highlighted at oral argument - namely, why isn't the federal government prosecuting the governor of New York for a marijuana distribution conspiracy - I fail to see how that would change this Court's rational basis review. Moreover, in light of recent announcements from the DEA regarding the potential rescheduling of marijuana, the necessity of flagging the clear change in attitude on marijuana or, as defendants put it, acting where "Congress and the DEA have failed to act," seems dubious.  Docket # 83 at 8.  At the very least, though, based on the law as outlined above, the outcome of an evidentiary hearing on defendants' claim would be a foregone conclusion at this point in time.  Accordingly, an evidentiary hearing on this issue would be fruitless, and defendants' request for one is **denied**.

## III. Defendants' Equal Sovereignty Claim

Finally, defendants argue that that the current classification of marijuana violates the doctrine of equal sovereignty under the Tenth Amendment.[7]  See Docket # 83 at 33-36.  Relying largely on the Supreme Court's decision in Shelby County, Ala. v. Holder, 570 U.S.

---

[7] "The principle of equal sovereignty recognizes that 'the constitutional equality of the states is essential to the harmonious operation of the scheme upon which the Republic was organized.'" United States v. Heying, No. 14-30, 2014 WL 5286153, at *15 (D. Minn. Aug. 15, 2014) (quoting Coyle v. Smith, 221 U.S. 559, 580 (1911)). A departure from equal sovereignty requires "a showing that a statute's disparate geographic coverage is sufficiently related to the problem that it targets."  Id. (internal citations omitted).

___, 133 S. Ct. 2612 (2013), defendants contend that their federal prosecution under the CSA "flatly contradicts New York's recognition of the medical use of marijuana" and, thus, infringes on the state's sovereign right to enact laws relating to the health and welfare of its citizens. See Docket # 83 at 33-36. While true that states have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," Gonzales v. Oregon, 546 U.S. 243, 270 (2006) (internal citations omitted), Congress' passage of the CSA was well within its power under the Commerce Clause. See Gonzales v. Raich, 545 U.S. 1, 15-22 (2005); see also United States v. Comstock, 560 U.S. 126, 136 (2010) ("Congress routinely exercises its authority to enact criminal laws in furtherance of, for example, its enumerated power to regulate interstate and foreign commerce . . . ."); United States v. Heying, No. 14-30, 2014 WL 5286155, at *4 (D. Minn. Oct. 15, 2014) (rejecting the defendant's Shelby County equal sovereignty challenge to the CSA because the Supreme Court's ruling "was focused on the sensitive areas of state and local policymaking whereas Congress's regulation of drugs through federal criminal laws involves Congress's broad authority to create federal crimes" (internal citations and quotations omitted)). Because Congress clearly has the authority to regulate the interstate traffic of narcotics, the Supremacy Clause instructs this Court that the CSA shall prevail over any contrary state law. See Gonzales

v. Raich, 545 U.S. 1, 29 (2005).

Moreover, to the extent that defendants believe the Supreme Court's decision in Shelby County mandates a different outcome, their argument is again misplaced. In Shelby County, the Supreme Court was concerned with the disparate treatment of states occasioned by a section of the Voting Rights Act that limited its application to certain states and their subdivisions. 133 S. Ct. at 2624. Here, defendants have not demonstrated – and, indeed, cannot demonstrate - any geographically disparate application of the CSA, a factor the Supreme Court has noted is "highly pertinent" to the equal sovereignty doctrine. Id.; see also Pickard, 100 F. Supp. 3d at 1011-12; Heying, 2014 WL 5286155, at *4 (noting that, in Shelby County, the Court "was deeply troubled by the Voting Rights Act's disparate treatment of the States and whether that disparate geographic coverage was justified" (internal citations omitted)). Accordingly, defendants' motion to dismiss the Indictment pursuant to the doctrine of equal sovereignty is **denied.**

## Conclusion

There can be no dispute that public opinion on whether marijuana has legitimate medical uses is changing in this country. It is not lost on this Court that less than a mile from the courtroom where the federal government is arguing that there is "no currently accepted medical use in treatment in the United States," marijuana

21

is being legally dispensed for medical use by individuals authorized and licensed by state government officials and the federal government has decided not to intervene in that sale and distribution.[8]

The issue here, however, is not whether public opinion is changing, but whether the CSA's classification of marijuana bears any rational relationship to a legitimate governmental interest. Evolving public views and changing medical opinions on both the efficacy and dangers of medical marijuana actually pay tribute to the difficulty defendants have in demonstrating that the current classification of marijuana is so arbitrary and irrational as to be unconstitutional.  For the foregoing reasons, it is my Report and Recommendation that the defendants' motion to dismiss Count One of the Indictment (Docket # 82) be **denied**.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: June 27, 2016
       Rochester, New York

---

[8] While the constitutional challenge the defendants' make here is perfectly proper, it is also true that the charges against the defendants have absolutely nothing to do with the medical use of marijuana.   The Green brothers are charged with participating in a conspiracy to distribute 100 kilograms or more of marijuana and then engaging in a money laundering scheme involving the proceeds of their alleged drug trafficking activities.  See Docket # 1.

22

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:     June 27, 2016
           Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).