DEC 0 7 2016

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

ALEXANDER GREEN and
CHARLES GREEN,

        Defendants.

**DECISION AND ORDER**

6:14-CR-06038 EAW

## **INTRODUCTION**

Defendants Alexander and Charles Green (collectively "Defendants"), indicted for an alleged marijuana conspiracy, seek dismissal on constitutional grounds. (Dkt. 82). Their motion to dismiss was initially considered by the magistrate judge[1] assigned to this case, who issued a thorough and comprehensive Report and Recommendation, recommending that the motion be denied. (Dkt. 157). Defendants have filed objections to that Report and Recommendation. (Dkt. 174).

Among other arguments, Defendants contend that their equal protection rights have been violated by the federal government's classification of marijuana as a Schedule I controlled substance—the highest level of drug classification. (*See id.*). Defendants seek an evidentiary hearing concerning marijuana's Schedule I classification, arguing that the classification is irrational and unconstitutional. (*Id.* at 21-22).

---

[1]     This Court referred all pretrial matters to United States Magistrate Judge Jonathan W. Feldman pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Dkt. 9).

Over 40 years ago, when dealing with a similar challenge to marijuana's Schedule I classification, the Second Circuit Court of Appeals cautioned: "Any court asked to undertake review of the multifarious political, economic and social considerations that usually underlie legislative prohibitory policy should do so with caution and restraint." *United States v. Kiffer*, 477 F.2d 349, 352 (2d Cir. 1973). Under the circumstances presented here, if the Court were to accept Defendants' invitation to conduct an evidentiary hearing to evaluate the rationality of marijuana's scheduling, it would be travelling a precarious road towards judicial arrogance—entertaining the possibility that this Court, and this Court alone, could make a determination under a rational basis standard of review that marijuana should be decriminalized.

That determination is for the legislative process, not the judicial process. Because Defendants have failed to establish that the classification of marijuana as a Schedule I controlled substance violates their constitutional rights, and because an evidentiary hearing will not impact that conclusion, this Court adopts the Report and Recommendation and Defendants' motion to dismiss is denied.

## BACKGROUND

A two-count indictment was returned on March 27, 2014, against Defendants[2] charging them pursuant to 21 U.S.C. § 846 with a narcotics conspiracy to possess with the intent to distribute, and to distribute, 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841,

---

[2]   Six defendants were charged in the indictment; all except for Alexander Green and Charles Green have pleaded guilty.

and a money laundering conspiracy in violation of 18 U.S.C. § 1956. (Dkt. 1). Defendants filed a joint motion to dismiss the narcotics conspiracy count (Count 1) on the grounds that the classification of marijuana as a Schedule I controlled substance violates Defendants' constitutional rights—namely their Fifth Amendment equal protection rights[3] and their Tenth Amendment rights. (Dkt. 82). Defendants requested a hearing to present evidence, as set forth in the submitted declarations of Carl Hart, Ph.D. and Luke J. Peppone, Ph.D., establishing that the continued inclusion of marijuana as a Schedule I controlled substance violates Defendants' constitutional rights. (*See* Dkt. 83 at 6). The Government filed a brief in opposition to Defendants' motion (Dkt. 106), Defendants filed a joint reply memorandum of law (Dkt. 109), and the Government filed a "Rejoinder" to the reply memorandum of law (Dkt. 113). Oral argument was held before United States Magistrate Judge Jonathan W. Feldman on August 19, 2015 (Dkt. 114), and on June 27, 2016, he issued a Report and Recommendation recommending that no evidentiary hearing be conducted and that Defendants' motion to dismiss Count 1 be denied (Dkt. 157).

Defendants filed objections to the Report and Recommendation on September 9, 2016 (Dkt. 174), and the Government filed its memorandum in opposition on October 5, 2016 (Dkt. 186). Oral argument was held before the undersigned on November 2, 2016, and the Court reserved decision. (Dkt. 193).

---

[3]    In a footnote, Defendants alternatively argued that they also asserted their constitutional challenges "under a more general and inclusive Due Process analysis." (Dkt. 83 at 10 n.13).

Defendants' objections focused on their argument that it is no longer rational to maintain that marijuana has no currently accepted medical use in treatment in the United States—one of the criteria established by Congress for the classification of a drug as a Schedule I controlled substance—and, therefore, at a minimum, the Court is obliged to conduct an evidentiary hearing to consider the medical field's current assessment of marijuana's efficacies before summarily denying Defendants' motion to dismiss. (*See* Dkt. 174 at 11).  Defendants go on to argue that even if there are competing opinions as to the medical value provided by marijuana, the state of medicine has evolved to the point where marijuana is currently accepted for medical use in treatment, and therefore the criteria for Schedule I classification is no longer satisfied. (*See id.* at 16-20).  In other words, according to Defendants' argument, the evidence they would present at a hearing would establish that it is irrational, and therefore unconstitutional, to conclude that there is no currently accepted medical use for marijuana. (*See id.* at 20-21).

This Court reviews Defendant's objections under a *de novo* standard.  Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (requiring a district court to make *de novo* determinations to the extent that a party makes specific objections to a magistrate's findings).

## THE CONTROLLED SUBSTANCES ACT

Congress enacted the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("the Act") in response to President Nixon's declared "war on drugs." *Gonzales v.*

- 4 -

*Raich*, 545 U.S. 1, 10 (2005).  The Act consolidated various drug laws into one comprehensive statute in an effort to, among other things, "strengthen law enforcement tools against the traffic in illicit drugs." *Id.*; *see, e.g.*, Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236, 1236 (1970) (describing the Act as intending "to strengthen existing law enforcement authority in the field of drug abuse").  Title II of the Act, codified at 21 U.S.C. § 801 *et seq.*, is the Controlled Substances Act ("CSA"), and it "repealed most of the earlier antidrug laws in favor of a comprehensive regime to combat the international and interstate traffic in illicit drugs." *Gonzales*, 545 U.S. at 7, 12.  Among other findings, Congress declared that the "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." Comprehensive Drug Abuse Prevention and Control Act § 101(2); *see, e.g.*, 21 U.S.C. § 801(2).  "Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Gonzales*, 545 U.S. at 13. Congress classified controlled substances into five separate schedules, the designation of which is based on "their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body." *Id.*

A drug falling within the scope of Schedule I—the highest level of classification with the most onerous control restrictions—must have:

1.      A high potential for abuse;

2.    "[N]o currently accepted medical use in treatment in the United
      States;" and,

3.    "[A] lack of accepted safety for use of the drug or other substance
      under medical supervision."

21 U.S.C. § 812(b)(1). Congress classified marijuana as a Schedule I drug when it

enacted the CSA based, in part, on the recommendation of the Assistant Secretary of the

Department of Health, Education, and Welfare, who urged marijuana's Schedule I

classification at least until the completion of studies which were already underway at the

time. *Gonzales*, 545 U.S. at 14.

Congress established a process for reclassification, vesting the Attorney General

with the power to reclassify a drug "on the record after opportunity for a hearing. . . ." 21

U.S.C. § 811(a). Before initiating proceedings under § 811(a), the Attorney General must

request a scientific and medical evaluation from the Secretary of Health and Human

Services ("HHS"), whose findings with respect to scientific and medical matters are

considered binding. *Id.* § 811(b). The Attorney General has delegated her

reclassification responsibility under the CSA to the Drug Enforcement Agency ("DEA").

*See* 28 C.F.R. § 0.100(b).

With respect to the second criteria for Schedule I classification (whether the drug

has "currently accepted medical use in treatment in the United States"), the DEA applies

a five-part test: "(1) [t]he drug's chemistry must be known and reproducible; (2) there

must be adequate safety studies; (3) there must be adequate and well-controlled studies

proving efficacy; (4) the drug must be accepted by qualified experts; and (5) the scientific

evidence must be widely available." *All. for Cannabis Therapeutics v. Drug Enf't*

*Admin.*, 15 F.3d 1131, 1135 (D.C. Cir. 1994).   In other words, all five of those criteria must be met in order for the DEA to conclude that a drug has currently accepted medical use in treatment in the United States. *See id.*

Those seeking to challenge the DEA's determination with respect to classification must pursue relief in a United States Court of Appeals.   21 U.S.C. § 877 ("[A]ny person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision.").   The question of whether a drug belongs in one schedule rather than another "clearly calls for fine distinctions, but the statutory procedure at least offers the means for producing a thorough factual record upon which to base an informed judgment." *Kiffer*, 477 F.2d at 357.   The existence of this statutory scheme "indicates that, in dealing with this aspect of the 'drug' problem, Congress intended flexibility and receptivity to the latest scientific information to be the hallmarks of its approach." *Id.*

Nonetheless, "[d]espite considerable efforts to reschedule marijuana, it remains a Schedule I drug." *Gonzales*, 545 U.S. at 15.   As of 2005, the D.C. Circuit Court of Appeals had reviewed petitions to reschedule marijuana on five separate occasions over the course of 30 years, ultimately upholding the DEA's determination in each instance. *Id.* at 15 n.23.   Since then, the D.C. Circuit has similarly upheld the DEA's determination

on at least one occasion. *See Ams. for Safe Access v. Drug Enf't Admin.*, 706 F.3d 438, 449 (D.C. Cir. 2013).[4]

In classifying marijuana as a Schedule I drug, "the manufacture, distribution, or possession . . . became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Gonzales*, 545 U.S. at 14. "Unlike Schedule I drugs, federal law permits individuals to obtain Schedule II, III, IV, or V drugs for personal medical use with a valid prescription." *Ams. for Safe Access*, 706 F.3d at 441.

## THIS COURT'S JURISDICTION

The Government argued in opposition to Defendants' motion to dismiss that the Court lacked jurisdiction to entertain Defendants' claims, reasoning that under the CSA all administrative determinations made by the Attorney General (or DEA), including scheduling, are subject to review in circuit court. (Dkt. 113 at 1-4). The Report and Recommendation rejected the Government's argument, reasoning that the Court had jurisdiction to evaluate Defendant's constitutional challenges. (Dkt. 157 at 4-5).

Although in agreement with the Report and Recommendation that jurisdiction exists to hear a proper constitutional challenge, the Court is not convinced that Defendants' argument constitutes a proper constitutional challenge to marijuana's

---

[4]     As noted in the parties' submissions, the DEA recently denied another petition to reschedule marijuana. (*See* Dkt. 174-2); Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53,767 (Aug. 12, 2016). The parties have not cited to any litigation commenced to challenge that most recent denial, and the Court's own independent research did not reveal any such litigation, at least in the D.C. Circuit Court of Appeals.

scheduling.    Defendants argue that they are challenging the constitutionality of Congress's failure to reclassify marijuana, and the DEA's refusal to do the same.  (*See* Dkt. 83 at 14).   The most recent DEA action prior to the return of the indictment in this case occurred in 2011, when the DEA denied a petition to reschedule marijuana, Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 76 Fed. Reg. 40,552 (Jul. 8, 2011), and the D.C. Circuit Court of Appeals rejected a challenge to that determination. *Ams. for Safe Access*, 706 F.3d at 449-450.   It is difficult to distinguish the argument advanced by Defendants in this Court from one that would be launched before the DEA and possibly in a circuit court.   The CSA establishes a scheme to reconsider the appropriateness of classifications, namely through a petition filed with the Attorney General.   Although Defendants attempt to avoid that statutory scheme by couching their challenge in constitutional language, it seems as though they are really challenging the administrative determination not to reclassify—a challenge for which this Court lacks jurisdiction.   In other words, the Court questions whether Defendants have attempted to disguise as a constitutional claim an argument that really should be asserted in a petition filed with the Attorney General.

When Defendants' argument is dissected, it essentially becomes an attack on the scheduling of marijuana based on the criteria set forth in the statute.  Defendants contend that it is irrational to conclude that there is no currently accepted medical use for marijuana—a standard not set forth in the Constitution, but rather one derived from the language of the CSA.  (*See* Dkt. 83 at 24).  Put another way, Defendants attempt to base

their claims of unconstitutionality on the language set forth in the statute at issue, not the Constitution.

Notwithstanding this Court's doubts as to whether Defendants have truly attacked marijuana's scheduling on constitutional grounds, a number of courts have engaged in the analysis requested by Defendants. *See, e.g.*, *United States v. Pickard*, 100 F. Supp. 3d 981, 994-98 (E.D. Cal. 2015) (rejecting the government's claim that the court lacked jurisdiction to hear a challenge to scheduling of marijuana); *United States v. Inzer*, No. 8:14-cr-437-T-30EAJ, 2015 WL 3404672, at \*2 (M.D. Fl. May 26, 2015) (concluding that the court had subject matter jurisdiction to hear the defendant's equal protection challenge to marijuana's classification); *United States v. Heying*, No. 14-CR-30 (JRT/SER), 2014 WL 5286153, at \*2 (D. Minn. Aug. 15, 2014) (allowing the defendants' constitutional challenge to be considered where the defendants were challenging the constitutionality of the statute that formed the basis for the charges alleged in their indictment, not an administrative determination, finding, or conclusion).

Indeed, both the Report and Recommendation, and Defendants rely upon the Second Circuit's decision in *Kiffer*, where that court rejected the government's argument that the proper avenue to challenge the Schedule I classification of marijuana was through a petition under the administrative framework of the CSA.[5] (*See* Dkt. 109 at 7; Dkt. 157 at 5). However, it is not clear that the Second Circuit would reach the same

---

[5]     The *Kiffer* court addressed the issue in the context of whether the defendants had failed to exhaust their administrative remedies by filing a petition with the Attorney General, as opposed to whether the district court had jurisdiction to consider the challenge. *Kiffer*, 477 F.2d at 351.

conclusion today.   At that time (in 1973), it was doubtful whether an administrative

remedy actually existed.  *See Kiffer*, 477 F.2d at 351-52.  Back then, the Director of the

Bureau of Narcotics and Dangerous Drugs[6] had taken the position that he could not

consider a petition to reclassify marijuana.  *See id.* at 351.  That position was ultimately

rejected by the D.C. Circuit Court of Appeals in *National Organization for Reform of*

*Marijuana Laws (NORML) v. Ingersoll*, 497 F.2d 654 (D.C. Cir. 1974), and *National*

*Organization for Reform of Marijuana Laws (NORML) v. Drug Enforcement*

*Administration*, 559 F.2d 735 (D.C. Cir. 1977), but at the time of *Kiffer*, the Second

Circuit viewed the administrative route available to the defendants in that case as "at

best . . . an uncertain and indefinitely delayed remedy."  *Kiffer*, 477 F.2d at 351-52.  The

uncertainty of any administrative remedy was the primary reason that the *Kiffer* court

determined that the defendants in that case did not have to challenge the scheduling

through the administrative scheme set forth in the statute.  *See id.*

The *Kiffer* decision remains binding on this Court, and it stands for the proposition

that a defendant may challenge the scheduling of marijuana through a constitutional

attack brought in district court.  Moreover, cases from other jurisdictions have allowed

for the type of challenge raised by Defendants with the present motion.  Thus, while the

Court questions the soundness of those decisions as applied to the circumstances present

here, it will nonetheless consider Defendants' arguments.

---

[6]     "In 1973, the Bureau of Narcotics and Dangerous Drugs became the DEA."
*Gonzales*, 545 U.S. at 12 n.18.

## IS THIS AN EQUAL PROTECTION CLAIM?

The Equal Protection clause of the Fourteenth Amendment—made applicable to the federal government through the Fifth Amendment's Due Process clause—provides that the government shall not "deny to any person within its jurisdiction the equal protection of the laws." *See* U.S. Const. amend XIV, § 1. A threshold question in any equal protection claim is whether similarly situated individuals are treated differently. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). As reflected by the questioning at oral argument, this Court instinctively has trouble reconciling how the classification of a drug, in and of itself, could implicate an individual's equal protection rights.

Drugs do not have constitutional rights—people do. The Equal Protection clause prohibits treating people differently for constitutionally impermissible reasons. *See id.* at 439-40. Here, Defendants have not formulated their challenge by arguing, for example, that individuals who possess marijuana are being treated differently than individuals who possess drugs with characteristics similar to marijuana. Put another way, the Court more readily understands how an individual claiming the need for marijuana for medical treatment could claim an equal protection violation on the theory that a prescription is not available for marijuana but it is available for any non-Schedule I drug. But that is not the argument advanced by Defendants—rather, Defendants' argument focuses simply on the Schedule I classification of marijuana, not the different treatment of individuals.

Notwithstanding the Court's skepticism about the ability of an individual to phrase the constitutional challenge in the manner articulated by Defendants, it will nonetheless

undertake the analysis. There are two primary reasons for this. First, in a footnote, Defendants alternatively argued that they have also asserted their constitutional challenges "under a more general and inclusive Due Process analysis." (Dkt. 83 at 13 n.13). The Court does not have similar concerns about Defendants' ability to attack the scheduling of marijuana from a due process perspective as it does with respect to the equal protection challenge, and, indeed, the analysis under either theory is essentially the same. *See Chapman v. United States*, 500 U.S. 453, 465 (1991) ("[A]n argument based on equal protection essentially duplicates an argument based on due process"); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 n.12 (1981) ("From our conclusion under equal protection, however, it follows *a fortiori* that the Act does not violate the . . . Due Process Clause.").

Second, despite the Court's articulated concerns about the ability to launch an equal protection challenge based upon the classification of a drug, there are a number of courts that have allowed for just such a challenge. *See, e.g., Pickard*, 100 F. Supp. 3d at 996; *see also Clover Leaf Creamery*, 449 U.S. at 461-70 (employing equal protection analysis to legislative classification between plastic and nonplastic nonreturnable milk containers, and determining that it was rationally related to achievement of statutory purposes); *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153-54 (1938) ("[W]e recognize that the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without the reason for the prohibition.").

## WHAT IS THE CONSTITUTIONAL QUESTION?

The Report and Recommendation concluded that Defendants' constitutional challenge should be evaluated utilizing the rational basis test, and this Court agrees with that conclusion for the reasons articulated in the Report and Recommendation. (*See* Dkt. 157 at 6-11).

Defendants have characterized the "central question" in this case as follows: "[D]oes the government's position that marijuana currently has *no accepted medical use* in the United States—a finding required for Schedule I substances—have a rational basis?" (Dkt. 109 at 4 (emphasis original)). Based upon the election results last month, comprehensive medical marijuana laws have been adopted in 28 states and the District of Columbia. *See* Katy Steinmetz, *These States Just Legalized Marijuana*, Time (Nov. 8, 2016), *available at* http://time.com/4559278/marijuana-election-results-2016. According to Defendants, 77 percent of Americans believe marijuana has a legitimate medical use. (Dkt. 83 at 33; *see also id.* ("Patients and citizens, whose collective wisdom are the bedrock of our democracy, have resoundingly voiced their acceptance.")).

It is difficult to conclude that marijuana is not currently being used for medical purposes—it is. There would be no rational basis to conclude otherwise. And if that were the central question in this case, Defendants' argument would have merit—but it is not the central question. Whether there are those in the community—or even a majority of citizens or states—who view marijuana as having medical value, cannot transform a statute into an unconstitutional infringement of a defendant's rights. Under the rational basis test, a statute will not be struck as unconstitutional because there is a widespread

movement against the classification. That would fly in the face of the purpose of equal protection rights. The Equal Protection clause protects against unlawful classifications regardless of whether the majority favors or disfavors the classification. *See, e.g., Brown v. Bd. of Educ. of Topeka, Shawnee Cty., Kan.*, 347 U.S. 483 (1954) (declaring unlawful pursuant to the Equal Protection clause laws in four states—those laws presumably reflecting the will of the majority—that racially segregated public schools). In other words, the Constitution dictates whether a particular piece of legislation passes muster— not popular opinion. Majority views are critical to the proper functioning of the legislative branch, but not to the judiciary.

"Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution." *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963) (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488-89 (1955)); *see, e.g., Bayside Fish Flour Co. v. Gentry*, 297 U.S. 422, 429 (1936) ("Every classification of persons or things for regulation by law produces inequality in some degree; but the law is not thereby rendered invalid, unless the inequality produced be actually and palpably unreasonable and arbitrary." (internal citation omitted)). Under the rational basis standard, the government "has no obligation to produce evidence to sustain the rationality of a statutory classification;" rather, "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993); *see, e.g., Kiffer*, 477 F.2d at 352 ("[C]ourts usually review challenged legislative acts with the understanding that they are

presumed valid and will be so found unless it is shown that the statute in question bears no rational relationship to a legitimate legislative purpose.").

The rational basis test is a very deferential standard and precludes second-guessing Congress's "wisdom, fairness, or logic of legislative choices." *Heller*, 509 U.S. at 319. Put differently, "it is up to legislatures, not courts, to decide on the wisdom and utility of legislation." *Clover Leaf Creamery*, 449 U.S. at 469 (internal citation omitted). If the question is "at least debatable," a court errs if it substitutes its judgment for that of the legislature. *Id.*; *see, e.g., Beatie v. City of New York*, 123 F.3d 707, 711-12 (2d Cir. 1997) (finding that it is not the "role of courts to speculate whether the evils proposed to be ameliorated by the law could have been better regulated in some other fashion."); *N.Y. Ass'n of Career Schs. v. State Educ. Dep't of the State of N.Y.*, 749 F. Supp. 1264, 1273 (S.D.N.Y. 1990) ("It is even irrelevant whether the classification will *in fact* promote the Legislature's intended purpose. All that is required is that the classification be not palpably arbitrary or in other words, that the Legislature could have decided rationally that the classification would likely further the underlying goals of the regulation." (citing *Clover Leaf Creamery*, 449 U.S. at 466) (emphasis original)).

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

- 16 -

Under this standard, a classification will withstand scrutiny even if the "line drawn by Congress [is] imperfect," *Vance v. Bradley*, 440 U.S. 93, 108 (1979), as Congress may reasonably decide to draw the line so as to admittedly not remedy or resolve all issues. *Kiffer*, 477 F.2d at 355 ("If Congress decides to regulate or prohibit some harmful substances, it is not thereby constitutionally compelled to regulate or prohibit all.  It may conclude that half a loaf is better than none."); *see, e.g.*, *Carolene Prods.*, 304 U.S. at 151 (finding that equal protection does not require the government through its legislative branch "to prohibit all like evils, or none.  A Legislature may hit at an abuse which it has found, even though it has failed to strike at another."); *Beatie*, 123 F.3d at 712 ("We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, because the problem could have been better addressed in some other way, or because the statute's classifications lack razor-sharp precision." (internal citations omitted)).

As summarized by the Second Circuit Court of Appeals:

> a [party attacking the constitutionality of a statute under a rational basis standard] must do more than show that the legislature's *stated* assumptions are irrational—he must discredit any conceivable basis which could be advanced to support the challenged provisions, regardless of whether that basis has a foundation in the record, or actually motivated the legislature. Otherwise stated, once the legislature's action has been shown to have some plausible rationale, a court's inquiry is at an end.

*Id.* at 713 (internal citations omitted) (emphasis original) (holding a city ordinance not unconstitutional where it prohibited cigar smoking in various public places because there was a plausible basis for the statute).

Defendants focus their argument on the claim that it is not rational for Congress or the DEA to continue to conclude that there is no acceptable medical use for marijuana. Admittedly, courts addressing similar claims have accepted this characterization of the argument, and those courts have evaluated an equal protection challenge in that context (albeit all resulting in determinations that there has been no constitutional violation). *See, e.g., Pickard*, 100 F. Supp. 3d at 1006-1009 (assessing the constitutionality of marijuana's classification as Schedule I based upon the three criteria set forth in 21 U.S.C. § 812(b), and determining that Congress could rationally conclude that marijuana has a high potential for abuse, has no established medical value, and that there is a lack of accepted safety for its use under medical supervision).   Indeed, the Report and Recommendation articulated the issue as follows: "[T]he analysis is not whether there is 'no current acceptance in this country of the medical use of marijuana,' but whether there is absolutely no rational basis for Congress to make that determination." (Dkt. 157 at 15 n.4).

Nonetheless, this Court does not believe that this is the correct question.   Rational basis review asks not whether it is reasonable to conclude that the specific criteria in the statute have been met, but, rather, whether there is any conceivable basis that might support the classification.   Under a rational basis test, the particular facts relied upon by the legislature in passing the statute are not determinative.[7]   *See Heller*, 509 U.S. at 320

---

[7]     The particular facts could be determinative under so-called "active" rational basis review.   However, that standard of review does not apply to marijuana's scheduling under the CSA. *See Pickard*, 100 F. Supp. 3d at 1005; *United States v. Wilde*, 74 F.

("'[L]egislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.'" (quoting *Beach Communications, Inc.*, 508 U.S. at 315)); *Carolene Prods.*, 304 U.S. at 154 ("[W]here the legislative judgment is drawn in question, [the inquiry] must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it.").

As explained by the court in *United States v. Wilde*, 74 F. Supp. 3d 1092 (N.D. Cal. 2014), when assessing an equal protection challenge to marijuana scheduling:

> If traditional rational basis applied, this factual information [(current scientific evidence and contemporary legislative developments)] would be irrelevant since legislation and regulations will be upheld so long as there is any 'conceivable' basis justifying the challenged classification. Under the traditional rational basis test, it is not necessary to examine the actual justification and supporting facts for the challenged classification.

*Wilde*, 74 F. Supp. 3d at 1097. Thus, the *Wilde* court determined that the defendant's voluminous exhibits pertaining to the safety and medical efficacy of marijuana were ultimately irrelevant under rational basis review. *Id.* at 1098-1099; *see, e.g., Heying*, 2014 WL 5286153, at \*9 ("'[T]he three statutory criteria for Schedule I classification . . . should not be read as being either cumulative or exclusive.' Thus, even assuming that

---

Supp. 3d 1092, 1097 (N.D. Cal. 2014); *Heying*, 2014 WL 5286153, at \*7. Moreover, there is some question as to whether such a standard of review even exists. *See Windsor v. United States*, 699 F.3d 169, 180-81 (2d Cir. 2012) ("The Supreme Court has not expressly sanctioned such modulation in the level of rational basis review; discussion pro and con has largely been confined to concurring and dissenting opinions. We think it is safe to say that there is some doctrinal instability in this area."), *aff'd*, 133 S. Ct. 2675 (2013).

marijuana has some accepted medical use, the 'Schedule I classification may nevertheless be rational in view of countervailing factors such as the current pattern, scope, and significance of marijuana abuse and the risk it poses to public health.'" (quoting *United States v. Fogarty*, 692 F.2d 542, 548 (8th Cir. 1982) (internal citations omitted)); *Nat'l Org. for the Reform of Marijuana Laws (NORML) v. Bell*, 488 F. Supp. 123, 140 (D.C. 1980) ("Even assuming, arguendo, that marijuana does not fall within a literal reading of Schedule I, the classification still is rational.  Placing marijuana in Schedule I furthered the regulatory purposes of Congress.  The statutory criteria of section 812(b)(1) are guides in determining the schedule to which a drug belongs, but they are not dispositive."); *see also United States v. Vila*, 599 F.2d 21, 25-26 (2d Cir. 1979) (rejecting the defendants' due process and equal protection challenges to cocaine's Schedule II classification because there were any number of rational bases to justify Congress's decision).

Put simply, this Court believes that the inquiry engaged in by the *Pickard* court, as well as some of the other decisions cited in the Report and Recommendation, is immersed too deeply in the precise criteria of the statute and expands a court's review beyond the rational basis test.  The issue is not whether it was rational for Congress or the DEA to conclude that there is no currently accepted medical use for marijuana—that would be the issue if a claim were brought in a circuit court challenging the DEA's administrative determination.  Rather, the constitutional issue for equal protection purposes is, simply, whether there is any conceivable basis to support the placement of marijuana on the most stringent schedule under the CSA.

Congress's stated purpose for the passage of the CSA was public health and safety. One need only review the DEA's most recent denial of a petition to reschedule to recognize the continuing public health and safety issues associated with marijuana use— it "induces various psychoactive effects that can lead to behavioral impairment," Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53,767, 53,774 (Aug. 12, 2016); it can result in a "decrease in IQ and general neuropsychological performance" for those who commence using it as adolescents, *id.*; it may result in adverse impacts on children who were subjected to prenatal marijuana exposure, *id.* at 53,775; it "is the most commonly used illicit drug among Americans aged 12 years and older," *id.* at 53,770; and its use can cause recurrent problems related to family, school, and work, including repeated absences at work and neglect of family obligations, *id.* at 53,783-84.

Even if there is a legitimate medical purpose associated with marijuana, under the rational basis standard of review, there are numerous conceivable public health and safety grounds that could justify Congress's and the DEA's continued regulation of marijuana as a Schedule I controlled substance. Under no reasonable view of the facts could it be concluded that it is irrational for Congress to continue to regulate marijuana in the manner which it has, and for the DEA to continue to adhere to a Schedule I classification for marijuana. No evidentiary hearing is required to reach that conclusion.

## DEFENDANTS CANNOT ESTABLISH THAT
## IT IS IRRATIONAL TO CONCLUDE THAT THERE IS
## NO CURRENTLY ACCEPTED MEDICAL USE FOR MARIJUANA

Notwithstanding the discussion above as to the proper question for a constitutional challenge under a rational basis test, the Court acknowledges that courts have expressed the constitutional inquiry as examining the criteria for Schedule I classification under the CSA. Indeed, as referenced in the Report and Recommendation, the Supreme Court in *Vance* defined the burden on those challenging the constitutionality of a statute on equal protection grounds as being required to "convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance*, 440 U.S. at 111; (*see* Dkt. 157 at 18).

Thus, the Court has also conducted a *de novo* review of the issues raised by the motion to dismiss, assuming that the proper area of inquiry is whether, in light of recent developments concerning the medical use of marijuana, there continues to be a rational basis to conclude that there is no currently accepted medical use for marijuana. Under those circumstances, Defendants' constitutional challenge still fails for the reasons set forth more thoroughly in the Report and Recommendation. Moreover, for the reasons set forth in the Report and Recommendation, an evidentiary hearing is not required to resolve this issue. This conclusion is only further buttressed by the DEA's most recent rejection of a petition to reschedule, wherein HHS concluded—based upon an analysis conducted by the Food and Drug Administration ("FDA")[9]—that "the available evidence

---

[9] In accordance with the CSA, the DEA requested a scientific and medical evaluation and scheduling recommendation from HHS. *Denial of Petition*, 81 Fed. Reg.

is not sufficient to determine that marijuana has an accepted medical use," and more research was required on this point. *Denial of Petition*, 81 Fed. Reg. at 53,768; *see id.* at 53,785-86 (establishing the FDA's recommendation that marijuana has no currently accepted medical use in treatment in the United States).

Any hearing on this issue is unnecessary. Whether the medical purposes for which marijuana is being used is "accepted" continues to be debated. As determined by the *Pickard* court, after a full evidentiary hearing, the medical use of marijuana in treatment remains the subject to "principled disagreement of the experts." *Pickard*, 100 F. Supp. 3d at 1007. Since the question is "at least debatable," a court would err if it were to substitute its judgment for that of the legislature. *Clover Leaf Creamery*, 449 U.S. at 469. As a result, the classification of marijuana as a Schedule I controlled substance withstands scrutiny under the rational basis test.

## CONCLUSION

As the Second Circuit indicated in *Beatie*: "The Constitutional presumption in this area of the law is that the democratic process will, in time, remedy improvident legislative choices and that judicial intervention is therefore generally unwarranted. We will intervene in the extraordinary circumstances where it can only be concluded that the legislature's actions were irrational." *Beatie*, 123 F.3d at 712. Here, there is no question that, at least at the state level, the democratic process has resulted in the authorized use of marijuana—both for medical and recreational purposes. But, according to Defendants,

---

at 53,769. Administrative responsibilities for evaluating a substance for control under the CSA are performed by the FDA, an HHS agency, with the concurrence of the National Institute on Drug Abuse. *Id.*

the federal government has not yet evolved to the point where the majority of citizens believe it should. Even if true, that does not justify the judiciary stepping in and striking CSA's scheduling of marijuana on constitutional grounds. Under a rational basis standard of review, marijuana's classification as a Schedule I controlled substance withstands scrutiny.

Therefore, for the reasons set forth above, and as set forth more fully in the Report and Recommendation, Defendants' motion to dismiss (Dkt. 82) is denied.[10]

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: December 7, 2016
       Rochester, New York

---

[10]    Defendants did not specifically object to the Report and Recommendation's conclusions regarding their Tenth Amendment claims. (*See* Dkt. 174). The Court is not required to review *de novo* those portions of a report and recommendation to which objections were not filed. *Male Juvenile*, 121 F.3d at 38 ("We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object."); *see also Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (requiring objections to a report to be "specific and clearly aimed at particular findings in the magistrate judge's proposal" to trigger *de novo* review). Nonetheless, this Court has conducted a careful review of the Report and Recommendation's conclusions regarding Defendant's Tenth Amendment claims, as well as all other arguments raised by Defendants in their initial motion papers, and the Court finds no reason to reject or modify the Report and Recommendation.