# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NY 10178**

(212) 808-7800

,
WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
HOUSTON, TX
PARSIPPANY, NJ
STAMFORD, CT
BRUSSELS, BELGIUM
AFFILIATE OFFICE
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

JAIMIE L. NAWADAY
DIRECT LINE:(212) 808-7695
EMAIL:jnawaday@kelleydrye.com

January 21, 2019

BY EMAIL (dawn_samuel@nywd.uscourts.gov)

Hon. Elizabeth A. Wolford
United States District Judge
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

Re:     *United States v. Alexander Green*, 14-Cr-6038

Dear Judge Wolford:

On behalf of Alexander Green, I write respectfully to request a modification to the conditions of his release to allow him to make a one-week business trip to Oslo, Norway in order to finalize plans for a permanent art installation.  Mr. Green would meet with the purchaser of the work, Stein Erik Hagen, the mayor of Oslo, and others concerning the installation's placement and operation outside of Oslo's City Hall.  Unlike many of the works Mr. Green creates through his company—Symmetry Labs—for temporary display, the Oslo project is a sale (and thus permanent installation) that would generate necessary proceeds to sustain Symmetry up through and beyond sentencing in this case.

As the Court is aware, Mr. Green has gone over two years without a single violation for missing a pretrial services appointment, while maintaining a strenuous work and business travel schedule.  He has passed over 100 drug tests administered to him since his arrest. He has traveled without incident to every corner of the country while on pre-trial release, from Maine, to Florida, to New York, to California, and most recently, to Hawaii.  And as this Court previously found, exceptional circumstances supported his remaining out on bail between plea and sentencing.

Recognizing, however, both the unusual nature of such a request pending sentencing, and the importance of the trip for his company, Mr. Green and defense counsel are willing to agree to additional conditions of release surrounding the trip.  In particular, to assure the court of Mr. Green's intention to appear for all further proceedings, and as a reflection of their belief in the sincerity of Mr. Green's intentions, as well as the necessity of this requested travel, defense counsel will pledge a portion of their defense retainer to guarantee Mr. Green's

**KELLEY DRYE & WARREN LLP**

Hon. Elizabeth A. Wolford
January 21, 2019
Page Two

return to this district following the Oslo trip. Mr. Green will also defer receiving any payment owed in connection with the installation until his return to the United States. He will also appear at the upcoming status conference on January 25, 2019, and therefore be available to answer any questions the Court may wish to pose directly to him about the project or the proposed trip. For the reasons set forth below, the trip is critical to the continued viability of Symmetry and the conditions of his release are sufficient to assure Mr. Green's continued appearance in this case.

**Background on Symmetry's Growth**

Mr. Green started Symmetry Labs in early 2014, just weeks before his arrest in this case. His vision was to show people that technology can be emotional and beautiful, and to demonstrate this by creating interactive lighting installations that could be "played" like musical instruments. He has poured his life into the company for nearly five years, well aware that its fate is uncertain. Not only did Mr. Green face the usual challenges of starting a new, difficult-to-explain, art-and-technology company, he also faced strict (though understandable) travel restrictions that hindered his ability to network, negotiate contracts, and oversee the projects he created.

As is the case with most start-ups, the success of the company is tied to confidence in the founder. This fact is more pronounced in the case of Symmetry, where Mr. Green is not only the CEO and founder, but also the lead artist and Chief Technology Officer. Clients and investors therefore reasonably demand that they meet personally with Mr. Green before investing or finalizing deals. On several occasions in the past few years, when Mr. Green could not accommodate requests for meetings, projects did not move forward.

Mr. Green's ability to grow the company was further imperiled when, in April 2017, he fell twenty feet through a warehouse skylight and onto a concrete floor while working on a project. (*See* Dkt. No. 200.) Mr. Green suffered fractures of his left hip, left pelvis, left arm, left scapula, and vertebrae L3, L4, and L5. (*Id.*) He spent two weeks in the hospital and was then confined to a wheelchair, unable to walk for six weeks.

While recovering in a hospital bed, however, he designed and engineered his first major tree installation, the Tree of Tenere, which debuted at a large art festival in Nevada in August 2017. (*See* Summary of Symmetry Projects, attached as Exhibit A.) He continues to suffer hip and back pain as a result of his fall, which is often exacerbated by the many hours he spends on planes. Finally, Mr. Green has for years endured the emotional strain of not knowing how and when the resolution of this case might affect his company. These facts not only highlight the significance of his achievements but also bear on his character, one the factors set forth at 18 U.S.C. § 3142(g)(3)(A) for the Court to consider in setting bail conditions. Mr.

**KELLEY DRYE & WARREN LLP**

Hon. Elizabeth A. Wolford
January 21, 2019
Page Three

Green's determination in the face of these circumstances to build a company that aims to inspire the public reflects the strength of his resolve and commitment to making a meaningful contribution to society.

The numerous business travel requests Mr. Green has submitted over the past few years provide a chronology of the company's growth.  He now regularly employs 25-30 people, dozens of additional contractors, and has displayed interactive art installations at New York City's South Street Seaport, Super Bowl City in San Francisco (a free-to-the-public fan village that celebrated Super Bowl 50), the U.S. Open Tennis, New York City's Summer Stage, in Honolulu, Hawaii, and in downtown Rochester, where his *Kalpa* installation was recently covered by local media.  (*See* "Nationally Acclaimed Artist Creates Magical Public Display for Upstate Hometown," attached as Exhibit B.)  As the attached article indicates, the tree in Rochester was a test prototype to determine how the interactive lighting technology might hold up in similar weather conditions in Norway.

**Symmetry's Financial Situation and the Need for the Oslo Trip**

Notwithstanding the artistic success of Symmetry's projects, the company's cash flow is a source of constant concern.  In the month of September, when Mr. Green spent many hours engaged in legal discussions concerning the resolution of this case, the company lost a significant amount of money and has not yet recovered financially.[1]  The temporary installations created by Symmetry require a tremendous amount of work in a very short period of time, but do not generate nearly as much money as sales, and therefore often cover the company's expenses for only a few weeks.

The Oslo project (as a sale) therefore promises to boost the company's likelihood of recovery.  The sale would provide needed cash flow and sustain the company for a period of months rather than weeks.  Placing the installation in a downtown location of a major European city would also give the company a new level of exposure that could generate additional business.  Although the installation was originally contemplated last spring, and a down payment was made in connection with the purchase, Mr. Green had requested (and was denied) permission to travel to Amsterdam.  Shortly thereafter, in discussions between the Government and Mr. Green's prior counsel—Jim Harrington—the Government also indicated that it would oppose a further request to travel to Oslo, so that request was never made to the Court.

---

[1] If the Court requests specific financial information on the company, we request permission to provide that information under seal.

**KELLEY DRYE & WARREN LLP**

Hon. Elizabeth A. Wolford
January 21, 2019
Page Four

Since then, the original contract date lapsed, and the contract is currently being re-negotiated as to projected date of delivery as well as price, as the piece is more expensive than originally anticipated.  (*See* Norwegian newspaper article on installation, attached as Exhibit C.)  In addition, the location for the installation has been confirmed and more detailed logistical preparations are underway.  (*See* December 2018 email correspondence, attached as Exhibit D.)

For the project to move forward, however, Mr. Green must appear personally in Oslo to meet with the mayor of Oslo and the individual purchaser, Stein Erik Hagen. The purchaser and the mayor both expect to meet with the lead artist before final preparations are made for a permanent art installation in the downtown area of Norway's capital and largest city. The city and the purchaser are taking a risk by giving an artist like Mr. Green (who is not yet known in Norway) a prominent downtown platform next to parliament, and it would be considered disrespectful for Mr. Green not to appear in person and express his gratitude for such an opportunity.

In addition, no one else at the company yet has the knowledge to be able to address the questions and concerns about design, construction, engineering, and safety that are likely to arise from the Oslo art committee and the relevant city and building departments.  Mr. Green therefore needs to appear in person to answer questions from the various stakeholders and establish a rapport with them in order to garner widespread support to move the project forward and ensure its success.

The proposed itinerary for the trip is as follows. Mr. Green would depart New York City on February 24, 2019, which would allow him sufficient time to procure a passport.[2] He would return to New York City on March 2 and surrender his passport to defense counsel, who could then provide it to the U.S. Probation Office.  While in Norway, Mr. Green would stay at Mr. Hagen's residence in Oslo.  As a condition of travel approval, Mr. Green also commits to provide a more detailed itinerary to the Court one week prior to his departure, as by then precise days and times for his meetings with city officials would be set.

**The Conditions of Release Suffice to Assure Mr. Green's Appearance**

The current conditions of release reasonably assure Mr. Green's appearance, taking into account the factors set forth at 18 U.S.C. 3142(g).  Mr. Green has never been

_____

[2] We note that these dates are approximate, as Mr. Green has refrained from confirming any travel plans with individuals in Oslo while this request is pending.

**KELLEY DRYE & WARREN LLP**


Hon. Elizabeth A. Wolford
January 21, 2019
Page Five


considered a danger and cannot be considered a flight risk after reliably appearing for court for nearly five years since his arrest.

Mr. Green's character is evident from the facts detailed above.  He has not simply maintained employment, he has built a company that employs others, and has done so in the face of numerous significant challenges.  His life and identity are essentially tied to Symmetry, and he would not abandon (and therefore destroy) it now by fleeing.

His appearance is also assured by his mother's house, a property he would not think to put at risk.  Mr. Green financially provided for his mother for years as she struggled to pay her rent, and even offered to move back to Rochester from New York City when she indicated that she was "almost out of money."  (*See* 2008 Email Correspondence, attached hereto as Exhibit E (redacted in part due to private health information).)  Just as Mr. Green would not abandon the company he has worked for years to build, he would not jeopardize his mother's house after working for years to protect it.

To further assuage any concerns about the trip, defense counsel will pledge a portion of their defense retainer to guarantee Mr. Green's return to this district, and Mr. Green will defer receipt of any payment owed on the installation until he returns to the country.  Mr. Green will also appear at the conference on January 25, 2019, so that the Court may (if it wishes) question him directly about the need for and circumstances of the requested trip.  Finally, to the extent that the Court has concerns about the travel, we respectfully request an opportunity to address them at the conference before any order is issued.

AUSA Sean Eldridge and USPO Nicholas Bavaria in Rochester indicated that they object to this request. USPO Josh Libby in San Francisco indicated that his office defers to the USPO in Rochester.

**Conclusion**

As this Court previously found, Mr. Green is neither a danger nor a flight risk, and he seeks permission for this brief trip to try to sustain the company he has spent years building.  The collapse of Symmetry would cause not only personal heartbreak for Mr. Green, but the loss of two dozen jobs and a force that contributes to the revitalization of urban public spaces around the country.   We respectfully request that permission to travel be granted.

**KELLEY DRYE & WARREN LLP**

Hon. Elizabeth A. Wolford
January 21, 2019
Page Six


Respectfully submitted,


/s/ *Jaimie Nawaday*
Jaimie L. Nawaday